## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MORTON A. BENDER** | ) | |
| **1025 Connecticut Avenue, N.W.** | ) | |
| **Suite 606** | ) | |
| **Washington, DC 20036** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GRACE M. BENDER** | ) | |
| **1025 Connecticut Avenue, N.W.** | ) | |
| **Suite 606** | ) | |
| **Washington, DC 20036,** | ) | |
| | ) | **C.A. No. _____** |
| | ) | |
| **Plaintiffs,** | ) | **Related Case No. 1:04CV00736** |
| | ) | **(RMC)** |
| **v.** | ) | |
| | ) | |
| **INDEPENDENCE FEDERAL SAVINGS BANK** ) | |
| **1229 Connecticut Avenue, N.W.** | ) | |
| **Washington, DC 20036** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### THE BENDERS' APPLICATION FOR TEMPORARY AND
### PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs Morton A. Bender and Grace M. Bender (the "Benders"), by and through their

undersigned counsel, pursuant to Local Rules 65.1(a) and 65.1(c) of the Rules of Civil

Procedure for the United States District Court for the District of Columbia, hereby apply to this

Court for a Temporary Restraining Order and for Preliminary Injunctive Relief, pursuant to the

terms of the proposed Order submitted herewith, and for such other and further relief as may be

appropriate. Pursuant to Local Rule of Civil Procedure 65.1(d), the Benders are also requesting,

by separate filing concurrently herewith, an expedited oral hearing on their Application.  In

support hereof, the Benders respectfully refer to and incorporate herein their Verified Complaint

(and its Exhibits), their Memorandum in support of their Application for Preliminary Injunctive

Relief and the Declaration of Morton A. Bender.


Respectfully submitted,

COOTER, MANGOLD, TOMPERT
 & KARAS, L.L.P.


_____

Dale A. Cooter, Bar #227454
Donna S. Mangold, Bar #358851
James E. Tompert, Bar #358952
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C.  20015
(202) 537-0700
efiling@cootermangold.com
*Attorneys for Plaintiffs*
 *Morton A. Bender and Grace M. Bende*r

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MORTON A. BENDER** | ) | |
| **1025 Connecticut Avenue, N.W.** | ) | |
| **Suite 606** | ) | |
| **Washington, DC 20036** | ) | |
| | ) | |
|   **and** | ) | |
| | ) | |
| **GRACE M. BENDER** | ) | |
| **1025 Connecticut Avenue, N.W.** | ) | |
| **Suite 606** | ) | |
| **Washington, DC 20036,** | ) | |
| | ) | **C.A. No. _____** |
| | ) | |
|       **Plaintiffs,** | ) | **Related Case No. 1:04CV00736** |
| | ) | **(RMC)** |
|     **v.** | ) | |
| | ) | |
| **INDEPENDENCE FEDERAL SAVINGS BANK** | ) | |
| **1229 Connecticut Avenue, N.W.** | ) | |
| **Washington, DC 20036** | ) | |
| | ) | |
| | ) | |
|       **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### THE BENDERS' APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs Morton A. Bender and Grace M. Bender, by and through their undersigned

counsel, submit this Memorandum of Points and Authorities in support of their Application for

Preliminary Injunctive Relief and state as follows:

### INTRODUCTION

Plaintiffs, Morton Bender ("Bender") and Grace Bender, as joint tenants, are the

beneficial owners of 326,000 shares of common stock of Defendant Independence Federal

Savings Bank ("Independence" or "Bank"), and thereby jointly own approximately 21% of the

outstanding stock of the Bank.[1]  Independence is a federally-chartered savings bank, with its

principal place of business in the District of Columbia.  Its stock is publicly traded on the

NASDAQ Stock Exchange.  This litigation is not the first between these parties.  As the

Plaintiffs' share ownership in the Bank has increased over time, the efforts of the Bank's Board

of Directors to thwart Bender have grown correspondingly.

In the most recently concluded litigation,[2] the Bank sued Bender alleging violations of

Section 13(d) of the Securities Exchange Act and seeking extraordinary relief in the form of

sterilizing the shares owned by Plaintiffs.  In response, Bender filed a counterclaim seeking

injunctive relief to prevent the Bank from enforcing a "poison pill" shareholder rights plan and

seeking to compel the Bank to hold an annual shareholders meeting.  The Bank's refusal to

timely hold its annual meeting of shareholders for the election of directors has been an ongoing

tactic since Bender first began to make known his dissatisfaction with the management and

direction of the bank.

By their Application, the Benders seek a preliminary injunction compelling

Independence: to convene on September 14, 2005 the annual meeting of its shareholders which

was scheduled for September 14, 2005; to rescind any notices or communications the Bank may

have already disseminated advising shareholders that the Directors voted to postpone the

September 14, 2005 date for the  meeting; and to affirmatively notify the shareholders that the

---

[1]  Grace Bender is not an active participant in the matters relevant to this litigation and she is a party solely in her capacity as a joint tenant shareholder with Bender.

[2]  *Independence Federal Savings Bank v. Morton Bender, et al.*, C.A. No. 04CV00736, U.S. District Court for the District of Columbia (Collyer, J.).

meeting will take place on September 14, 2005.[3]

## FACTS

As noted above, Plaintiffs, as joint tenants, are the beneficial owners of 326,000 shares of common stock of Independence, and thereby jointly own approximately 21% of the outstanding stock of the Bank. The Bank's fiscal year ends on December 31 each year. On April 6, 2004, the Board of Directors of Independence voted to amend Article II, Section 2 of the Bank's bylaws to set the date of the Bank's annual meeting "within 150 days after the end of the savings bank's fiscal year on the third Wednesday of April . . . or at such other date and time within such 150-day period as the board of directors may determine." A copy of the April 6, 2004 amendment is attached to the Verified Complaint as Exhibit A. The Bank's amended bylaws conform to OTS regulations which require that a savings association's annual meeting be held within 150 days of the end of its fiscal year. 12 C.F.R. §552.6(a). Thus, the annual meeting of Independence's shareholders should have been held April 20, 2005 (the third Wednesday in April, 2005), but in no event later than May 31, 2005 (one day after Memorial Day which was the 150th day after the close of the Bank's fiscal year on December 31, 2004). The 2005 annual meeting was not scheduled to take place before April 20, 2005, but a Special Meeting in lieu of the Annual Meeting of Shareholders was scheduled for May 11, 2005, prior to the May 31, 2005 corporate and regulatory annual shareholder meeting deadline. In anticipation of the scheduled May 11, 2005 meeting, at which three directors would be elected to the Bank's Board, Bender sent a letter, dated April 26, 2005, to the Bank's corporate secretary giving notice that Bender was

---

[3] The Benders are filing, concurrently herewith, a request for an expedited oral hearing on their Application for Preliminary Injunctive Relief.

3

nominating two persons for election to the Board.  A copy of Bender's April 26, 2005 letter is attached to the Verified  Complaint as Exhibit B.

　　　By letter dated May 10, 2005, the OTS suggested that the Bank adjourn the meeting for a **brief** period due to concern by the OTS that, in anticipation of the scheduled meeting, the Bank's shareholders had been given inaccurate information by groups acting on behalf of the Bank and had been given inaccurate information by Bender and that the information both from Bender and from the groups acting on behalf of the Bank was intended to influence the voting by the shareholders.  A copy of the May 10, 2005 OTS letter is attached to  the Verified  Complaint as Exhibit C.  The 2005 annual meeting was convened on May 11, 2005;  however, pursuant to the OTS suggestion, no business was conducted at the meeting and the meeting was adjourned.  The Bank then rescheduled the meeting to June 8, 2005.  However, on May 31, 2005, just a week prior to the date of the reconvened shareholders' meeting, the Bank issued a press release stating that the meeting would not, in fact, be reconvened on June 8, 2005 and that the Bank's Board of Directors would meet to determine a new date for the shareholders' meeting.   A copy of the May 31, 2005 press release is attached to the Verified  Complaint as Exhibit D.   The new date was eventually set for September 14, 2005.   *See* Page 1 of August 25, 2005 Notice to Shareholders, attached to  the Verified  Complaint as Exhibit E.

　　　With the September 14, 2005 annual meeting of shareholders fast approaching, Carolyn D. Jordan, the chairperson of the Bank's Board of Directors, notified the Board members on September 7, 2005, that a Special Meeting of the Board of Directors would be held on September 9, 2005 "[t]o consider matters related to disclosures contained in two recent 13D filing made last week on behalf of Morton Bender and how such disclosed information may impact the Bank."  A

4

copy of Ms. Jordan's September 7, 2005 Notice is attached to the Verified Complaint as Exhibit F.  At that September 9, 2005 special meeting of the Board, the Directors voted to postpone yet again the Shareholders' Meeting.

## ARGUMENT

### I.    SUBSTANTIVE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF

"In considering a request for preliminary injunctive relief, a district court must examine whether '(1) there is a substantial likelihood [movant] will succeed on the merits; (2) [movant] will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the [non-movant]; and (4) the public interest will be furthered by an injunction.'" Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc., 295 F. Supp. 2d 75, 81 (D.D.C. 2003)(Collyer, J.) (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360 (D.C. Cir. 1999)).  See Mova Pharmaceutical corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  As this Court explained in its decision in Atlantic Coast, the four factors "'interrelate on a sliding scale' and a particularly strong showing on one may compensate for a weak showing on another." Atlantic Coast, 295 F. Supp.2d at 81 (citations omitted).  Injunctive relief is appropriate in matters of corporate governance.  See Woodward & Lothrop, Inc. v. Schnabel, 593 F. Supp. 1385 (D.D.C. 1984) (shareholders entitled to temporary restraining order directing that a scheduled shareholder vote on a proposed merger be enjoined until such time as amended and accurate information regarding the proposed merger could be disseminated).

## II.    THERE IS SUBSTANTIAL LIKELIHOOD THAT THE BENDERS WILL SUCCEED ON THE MERITS OF THEIR CLAIMS

### A.    Independence Should Be Ordered to Hold The Annual Meeting to Elect Directors on September 14, 2005

There is a substantial likelihood that the Plaintiffs will succeed on the merits of their request that the shareholders meeting be held on September 14, 2005 as had been scheduled.  The Bank and the directors have no basis in law on which they can continue to refuse to hold a shareholders  meeting.  The Bank's continuing delay in holding a meeting for the  election of directors violates the Bank's own bylaws and OTS regulations.  Article II, Section 2 of the Bank's Amended and Restated Bylaws effective  April 6, 2004 provide that the annual meeting of shareholders shall take place  "within 150 days after the end of the savings bank's fiscal year on the third Wednesday of April . . . or at such other date and time within such 150-day period as the board of directors may determine."  A copy of the 4/6/04 amendment to the Bylaws is attached to the Verified Complaint as  Exhibit A. The regulations of the OTS require that a Bank's annual meeting be held within 150 days of the end of its fiscal year.  12 C.F.R. §552.6(a). Thus, the annual meeting should have been held April 20, 2005 (the third Wednesday in April, 2005),  but in no event later than May 31, 2005 (one day after Memorial Day which was the 150th day after the close of the Bank's fiscal year on December 31, 2004).   The 2005 annual meeting was not scheduled to take place before April 20, 2005, but a Special Meeting in lieu of the Annual Meeting of Shareholders was  scheduled for May 11, 2005, prior to the May 31, 2005 corporate and regulatory annual shareholder meeting deadline.   In anticipation of the scheduled May 11, 2005 meeting, at which three directors would be elected to the Bank's Board, Bender

6

sent a letter, dated April 26, 2005, to the Bank's corporate secretary giving notice that Bender

was  nominating two persons for election to the Board.  A copy of this letter is attached to the

Verified Complaint as Exhibit B.

By letter dated May 10, 2005, the OTS suggested that the Bank adjourn the meeting for a

*brief* period due to concern by the OTS that, in anticipation of the scheduled meeting, the Bank's

shareholders had been given inaccurate information by groups acting on behalf of the Bank and

had been given inaccurate information by Bender and that the information both from Bender and

from the groups acting on behalf of the Bank was intended to influence the voting by the

shareholders.  A copy of the this letter is attached to the Verified Complaint as Exhibit C.  The

2005 annual meeting was convened on May 11, 2005;  however, pursuant to the OTS suggestion,

no business was conducted at the meeting and the meeting was adjourned.

The shareholders meeting was then scheduled to reconvene June 8, 2005.  However, on

May 31, 2005, just a week prior to the date of the reconvened shareholders' meeting, the Bank

issued a press release stating that the meeting would not, in fact, be reconvened on June 8, 2005

and that the Bank's Board of Directors would meet to determine a new date for the shareholders'

meeting.  A copy of the press release  is attached to the Verified Complaint as Exhibit D.  The

Bank ultimately decided that it would hold the shareholder meeting on September 14, 2005.  A

copy of page 1 of the Bank's Notice to Shareholders is  attached to the Verified Complaint as

Exhibit E.

 On September 7, 2005 – just one week prior to the date of the long-delayed meeting of

shareholders –  Carolyn D. Jordan, the chairperson of the Bank's Board of Directors, notified the

Board members that a Special Meeting of the Board of Directors would be held on September 9,

7

2005 "[t]o consider matters related to disclosures contained in two recent 13D filing made last week on behalf of Morton Bender and how such disclosed information may impact the Bank."  A copy of Ms. Jordan's September 7, 2005 Notice is attached to the Verified Complaint as Exhibit F.   At its special meeting of directors on September 9, 2005, the Board voted to postpone yet again the Shareholders' Meeting now scheduled for September 14, 2005.  Thus, as has happened in years past, the Bank has again stalled the holding of the shareholders meeting at which directors are to be elected.  Only an order, by way of mandatory injunction, directing the meeting to take place by September 14, 2005, can ensure that the annual meeting will in fact occur.

The propriety of granting an injunction in these circumstances is well-established.  In Aprahamian v. HBO & Co., 531 A.2d 1204 (Del. Ch. 1987), the court granted plaintiff's motion for preliminary injunction prohibiting any further postponement of the annual meeting of shareholders. As noted by the court in Aprahamian, "[t]he corporate election process, if it is to have any validity, must be conducted with scrupulous fairness and without any advantage being conferred or denied to any candidate or slate of candidates.  In the interest of corporate democracy, those in charge of the election machinery of a corporation must be held to the highest standards in providing for and conducting corporate elections."  531 A.2d at 1206-07. Under Delaware statutory corporate law,[4] a board of directors is required to convene an annual

---

[4]  It is not entirely clear which law applies in this case.  Independence is a federally chartered thrift.  Although OTS regulations permit a thrift in its charter to elect that certain portions of the laws (except for antitakeover provisions) of the place where the thrift operates (here, primarily the District of Columbia, but also Maryland), the laws of Delaware,  the Model Business Corporation Act, or some other state's laws will apply, Independence made no such selection in its charter.  Because the OTS would permit a thrift such as Independence to select portions of Delaware law, and because both the District of Columbia and Maryland look to Delaware law when their laws are silent, Delaware law is sometimes relied on herein.

meeting and if it fails to do so, the board of directors may be summarily compelled by the

Chancery Court to convene the meeting.  See Speiser v. Baker, 525 A.2d 1001, 1005-06 (citing 8

Delaware Code §211 and noting that no cases were cited by the parties in which a court actually

declined to compel a meeting once the statutory elements[5] were proven); see also Hoschett v. TSI

Intern. Software, Ltd., 683 A.2d 43, 44 (Del. Ch. 1996) ("obligation to hold an annual meeting . .

. is one of the very few mandatory features of Delaware corporation law.  Delaware courts have

long recognized the central role of annual meetings in the scheme of corporate governance").

The District of Columbia also requires corporations to hold annual meetings "at such time as may

be provided in the bylaws."  D.C. Code §29-101.25. Whether to hold an annual meeting simply is

not discretionary - no matter what interest the board may have in **not** having the meeting.

"Whether [the annual meeting] is welcome or resented by management, however, is in the end,

irrelevant under Section 211(b) and (c) of the DGCL and similar statutes in other jurisdictions."

Hoschett, 683 A.2d at 45.

     The importance of the shareholder right to vote was expressed by the Delaware Chancery

Court as follows:

> The shareholder franchise is the ideological underpinning upon which the
> legitimacy of directorial power rests.  Generally, shareholders have only two
> protections against perceived inadequate business performance.  They may sell
> their stock . . or they may vote to replace incumbent board members.

---

[5] To establish the statutory elements under Delaware law, a plaintiff must demonstrate
that (1) he is a shareholder and (2) that no annual meeting has been held within 30 days of the
date designated therefor or, if no date had been set, for 13 months since the last annual meeting.
Speiser, 525 A.2d at 1005 (citing 8 Del. Code §211(c).  "Proof of these two statutory elements
has been said to constitute a *prima facie* case for relief."  525 A.2d at 1005.  Here, the original
date set for the meeting was May 11, 2005.  Almost ***120*** days have passed since then and still no
annual meeting has occurred.

It has, for a long time, been conventional to dismiss the stockholder vote as a vestige or ritual of little practical importance. [Footnote omitted].  It may be that we are now witnessing the emergence of new institutional voices and arrangements that will make the stockholder vote a less predictable affair than it has been.  Be that as it may, however, whether the vote is seen functionally as an unimportant formalism, or as an important tool of discipline, it is clear that it is critical to the theory that legitimates the exercise of power by some (directors and officers) over vast aggregations of property that they do not own.  Thus, when viewed from a broad, institutional perspective, it can be seen that matters involving the integrity of the shareholder voting process involve consideration not present in any other context in which directors exercise delegated power.

Blasius Industries, Inc. v. Atlas Corp., 564 A.2d 651 , 659 (Del. Ch. 1988).

In addition to the fact that the Board's September 9, 2005 action directly violates express federal regulations governing the holding of annual shareholder meetings,  the Board's actions cannot withstand the heightened judicial scrutiny to which it is subject.[6]  In Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946 (Del. Supr. 1985), the Delaware Supreme Court set out a two-pronged test for the evaluation of defensive measures[7] taken by a corporation.  Under that test, the directors must demonstrate (1) that they had "reasonable grounds for believing that a danger to corporate policy and effectiveness existed because of another person's stock ownership" and (2) that the particular defensive mechanism is "reasonable in relation to the threat posed."  493 A.2d at 955.  Here, the Independence board will not be able to sustain this burden.  Where, as here, the defensive measure adopted "purposefully disenfranchise[s]

---

[6]  The Benders submit that because the Board's actions on September 9, 2005 are clearly invalid, this court need not even undertake a Unocal analysis.  Out of an abundance of caution, however, the Benders have included a Unocal discussion.

[7]  That the Board's actions on September 9, 2005 were "defensive measures" is made clear by Ms. Jordan's September 7, 2005 Notice calling the meeting: "[t]o consider matters related to disclosures contained in two recent 13D filing made last week on behalf of Morton Bender and how such disclosed information may impact the Bank."  A copy of Ms. Jordan's September 7, 2005 Notice is attached to the Verified Complaint as Exhibit F.

shareholders," the board must satisfy the more exacting standard set out in <u>Blasius Industries,</u>
<u>Inc. v. Atlas Corp.</u>, 564 A.2d 651 , 659 (Del. Ch. 1988);  <u>Carmody v. Toll Bros.</u>, 723 A.2d 1180,
1193 (Del. Ch. 1998).  The <u>Blasius</u> standard provides: "A board's unilateral decision to adopt a
defensive measure touching 'upon issues of control' that purposefully disenfranchises its
shareholders is strongly suspect under *Unocal*, and cannot be sustained without a 'compelling
justification.'" <u>Carmody</u>, 723 A.2d at 1193 (quoting <u>Stroud v. Grace</u>, 606 A.2d 75, 92 n.3
(1972)).  The Board's actions on September 9, 2005  is part and parcel of the Bank's attempt to
preclude the Benders from maximizing their right as shareholders to participate in corporate
democracy.

      Thus, the Benders are likely to succeed on the merits of their claim that a meeting should
be held by September 14, 2005  - the holding of an annual meeting is expressly required by the
Bank's bylaws and is expressly required by the OTS regulations.

      **B.**    **Independence Should Be Ordered to Cease and Desist from
Communicating to Any Shareholders that the Meeting has
Been Canceled and Ordered to Affirmatively Notify
Shareholders that the Meeting Will Be Held September 14,
2005**

      The Plaintiffs also seek an order that the Bank cease and desist from communicating to
any shareholders that the Meeting has been canceled.  In the event that the Bank will have
already made any such communications by the time the Court hears this matter, the Plaintiffs
request that the Bank take affirmative steps (such as the issuance of a press release) to notify
shareholders that the annual meeting will take place as scheduled on September 14, 2005 despite
any prior communications or notices to the contrary.  If this relief is not granted, it is likely that
the turn-out at the annual meeting will be lower than it otherwise would have been and it is likely

that fairness of the election may be adversely impacted.  There is a substantial likelihood that the

Plaintiffs will succeed on the merits of this request because if the Court grants the first part of the

Plaintiffs' requested relief - that the shareholders meeting be held September 14, 2005 – the

impact of that relief may be greatly diminished if shareholders believe that the meeting has been

canceled and do not vote.


**III.    BECAUSE OF THE BANK'S ACTIONS, THE BENDERS ARE SUFFERING, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM**

The Bank's delay and further postponement of the annual meeting  have caused the

Benders to suffer irreparable harm in that they are being denied the opportunity to participate in

corporate governance.  In the Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc., 295

F. Supp. 2d 75, 81 (D.D.C. 2003)(Collyer, J.) case, this Court, in denying the first ground for

injunctive relief (the injunction was granted based on a second ground), found that, on Atlantic's

Coast's securities claims, "Mesa would suffer harm as a shareholder who *desires a timely change*

*in the ACA Board* if, because of this single omission, the Court ordered a correction and cooling

off period" by granting the injunction.  295 F. Supp.2d at 87.  Here, the denial of the injunctive

relief sought by the Benders will cause them to suffer irreparable harm as shareholders who

desire a timely change in the board of Independence.  See International Banknote Co., Inc. v.

Muller, 713 F. Supp. 612, 623 (S.D.N.Y. 1989) ("[c]ourts have consistently found that corporate

management subjects shareholders to irreparable harm by denying them the right to vote their

shares or unnecessarily frustrating them in their attempt to obtain representation on the board of

directors"); ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094, 1100, 1101 (D. Mass. 1990)

12

(noting that "one of the most sacred rights of any shareholder is to participate in corporate democracy," and that "[c]ourts have consistently recognized the irreparable harm associated with delay[ing]" annual meetings, court ordered corporation to restore annual meeting to its original date).

By contrast, the Bank will not suffer substantial injury if the preliminary injunction is granted. The Bank is already obligated by its own bylaws and by OTS regulations to have held an annual meeting no later than May 31, 2005. Granting injunctive relief to order the Bank to rescind actions it was unauthorized to take in the first instance cannot substantially injure the Bank. The Benders are asking for no more than that to which they are already entitled by law, by contract (via the Bylaws), and by federal regulation. The Bank cannot establish any injury by complying with these obligations.

## IV.    THE PUBLIC INTEREST WEIGHS IN FAVOR OF GRANTING THE RELIEF REQUESTED

The public clearly has an interest in the enforcement of corporate bylaws and the enforcement of federal laws and regulations governing banks - especially a bank that has been found by its regulators to be in "troubled" condition.[8] The public has "no legitimate interest in the abrogation of contract rights conferred upon" shareholders. ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094, 1103 (D. Mass. 1990). An injunction furthers the public interest where it ensures that "corporate democracy and shareholder participation in the management" of the

_____

[8]  The Court will recall that by letter dated November 4, 2003, the OTS advised the Bank that the OTS had determined that the Bank is both a "problem association" and in "troubled condition."

corporation is served. AHI Metnall v. J.C. Nichols Co., 891 F. Supp. 1352, 1360 (W.D. Mo. 1995). See Treco, Inc. v. Land of Lincoln Sav. and Loan, 572 F. Supp. 1447 (N.D. Ill. 1983). The public has an interest in the disallowance of corporate machinations which interfere with the regulatory process. The public also has an interest the invalidation and rescission of board actions approved in the manner which directly violates federal banking statute and regulations. The granting of the requested injunctive relief - that the Bank hold the annual meeting for the election of directors on September 14, 2005, and that the Bank cure any communications in which it may have engaged which informs shareholders that the meeting is not to take place on September 14, 2005 -- will advance the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court schedule an expedited oral hearing on this matter and enter the Preliminary Injunction as requested.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.

_____
Dale A. Cooter, Bar #227454
Donna S. Mangold, Bar #358851
James E. Tompert, Bar #358952
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700
efiling@cootermangold.com
*Attorneys for Plaintiffs*
*Morton A. Bender and Grace M. Bende*r

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Benders' Application for Preliminary

Injunctive Relief, Memorandum of Points and Authorities in support thereof, and proposed Order

was sent by facsimile on the 9th day of September 2005, to:

                    James H. Schropp, Esquire
                    Fried, Frank, Harris, Shriver
                     & Jacobsen, LLP
                    1001 Pennsylvania Avenue, N.W.
                    Washington, D.C. 20004-2505
                    schroja@ffhsj.com

                    Mr. Thomas Batties, President
                    INDEPENDENCE FEDERAL SAVINGS BANK )
                    1229 Connecticut Avenue, N.W.
                    Washington, DC 20036

                                          _____
                    Dale A. Cooter